IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK R. BRANCATELLI, *et al.*,<br><br>Defendants. | CASE NO. 1:23-cv-1804<br><br>DISTRICT JUDGE<br>DAVID A. RUIZ<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**MEMORANDUM OPINION AND ORDER** |

In this matter, the United States seeks to enforce its tax liens against real property to satisfy a judgment it has against Defendant Frank R. Brancatelli. The property is allegedly owned by Defendant Linda Brancatelli, but the Government believes that it can show that she "holds the Property as the nominee, fraudulent transferee, or agent of Frank R. Brancatelli." Doc. 1, at 6.

In its one-count complaint against the Brancatellis, the Government asserts facts that it alleges supports "fraudulent transfer" of the property "under a constructive fraud theory." Doc. 51-1, at 3; *see* Doc. 1, at 6, ¶20. Shortly before the close of fact discovery, and after it took the depositions of the Brancatellis and their son, Matthew J. Brancatelli, the Government filed a Motion for Leave to file an Amended Complaint to add three new legal theories in support of its lien enforcement claim based on facts it claimed that it learned during the depositions. Doc. 51. The Brancatellis oppose the Motion,

arguing that the Government has known about these "new facts" since 2007. Doc. 52. The Government has filed a reply brief. Doc. 53. For the following reasons, the Government's Motion is denied.

*Summary of background facts*[1]

In August 2007, the Government reduced to judgment a tax debt owed by Frank Brancatelli. *See United States v. Brancatellli, et. al*, Case No. 1:06-cv-463, Doc. 18, *Stipulation and Consent Order* (N.D. Ohio Aug. 30, 2007). The tax debt stemmed in large part from nine years of income tax that Frank Brancatelli failed to pay between 1994 and 2003, plus statutory interest and additions. Doc. 1, at 5, ¶16. On June 20, 2011, an abstract of judgment was recorded in Lake County, recording the 2007 judgment and creating a lien on all real property belonging to Frank Brancatelli, or property in which he has an interest. Doc. 1, at 6, ¶18.

To date, the Government alleges, Frank Brancatelli hasn't paid anything toward the judgment, and as of March 2023, he owes the United States $420,197.27, plus penalties and interest that continue to accrue. Doc. 1, at 6, ¶17; Doc. 51-1, at 2.

In this 2023 lawsuit, the Government seeks to enforce its federal tax liens on the Lake County house that Frank and Linda Brancatelli live in, the "Property," and which is allegedly own by Linda, *see* Doc. 1, at 3, ¶10; at 6, ¶20.

---

[1] This summary is taken from the Government's complaint and Motion for leave to amend complaint.

2

The Government alleges in its Complaint that Linda Brancatelli "holds the Property as the nominee, fraudulent transferee, or agent" of Frank Brancatelli, who, in turn, is the "true and equitable owner of the Property." Doc. 1, at 6, ¶20. The Government seeks an order enforcing the liens against the Property so that it can sell the Property and apply the sale proceeds to Frank Brancatelli's debt. *Id.* at 10; Doc. 51-1, at 2.

Five months after the Court's deadline for the parties to amend their pleadings, the Government filed a Motion for leave to amend the complaint. Doc. 51. In its Motion, the Government explains that its complaint "currently only asserts facts to support a constructive fraud theory of fraudulent transfer pursuant to Ohio Revised Code § 1336.04(A)(2)." Doc. 51-1, at 4. It seeks to add three new theories to support its lien enforcement claim—actual fraud, under Ohio Revised Code §1336.04(A)(1); resulting trust; and lien tracing. *Id.* at 2.

*Legal Standard*

Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to a party to amend a complaint "when justice so requires." But a court may deny a party leave to amend under a number of circumstances, including bad faith, undue delay, dilatory motives, undue prejudice to the opposing party, repeated failure to cure deficiencies in prior amendments, and futility. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 139 (2019); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

3

Here, the Court's Case Management Plan set February 23, 2024 as the cutoff date to amend the pleadings. Doc. 34, at 1. Under Federal Rule of Civil Procedure 16(b)(4), before the Court evaluates under Rule 15(a) the Government's Motion, the Government must first show "good cause" for failing to earlier seek leave to amend. *See* Fed. R. Civ. P. 16(b)(4); *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003). A court also considers any prejudice to the nonmoving party. *Leary*, 369 F.3d at 909; *Bare v. Fed. Express Corp.*, 886 F. Supp.2d 600, 605–06 (N.D. Ohio 2012). "In order to demonstrate good cause, the plaintiff must show that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (citing *Leary*, 349 F.3d at 906). This good cause standard is "not optional"; a court may not grant a motion under Rule 16(b) unless the plaintiff shows that "despite their diligence they could not meet the original deadline." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) and *Leary*, 349 F.3d at 907).

*Analysis*

The Government asserts that it has been diligently litigating this case, including engaging in discovery, and that it was only during the late-July 2024 depositions of the Brancatellis and their son, Matthew, that it learned "information previously unknown (or unconfirmed)." Doc. 51-1, at 7; *see id.* at

4

3–4 (listing 12 items the Government says it "uncovered" during the Brancatellis' depositions). Based on this newly learned information, the Government says, it seeks leave to add three new legal theories to support its lien enforcement claim. But review of the record in the 2006 case between the Government and Frank and Linda Brancatelli shows that the Government knew most, if not all, of the factual allegations that it claims to have recently learned.

As an initial matter, both parties have referenced the 2006 case, *United States v. Brancatellli, et. al*, Case No. 1:06-cv-463 (*Brancatelli I), see* Doc. 1, at 5, ¶15 (Complaint), Doc. 52, at 1, and the Government discussed the parties' filings in that case, Doc. 1, at 6, ¶20(b). In *Brancatelli I*, the parties entered into a stipulation that reduced to judgment the tax debt owed by Frank Brancatelli, but not before the parties in July 2007 filed summary judgment motions. *See Brancatelli I*, Docs. 13, 14. Under Federal Rule of Evidence 201, this Court takes judicial notice of the filings in *Brancatelli I. See* Fed. R. Evid. 201 (a court may, on its own, take judicial notice of a fact that is "generally known within the trial court's territorial jurisdiction"); *Church Joint Venture, L.P. v. Blasingame*, 817 F. App'x 142, 144 (6th Cir. 2020) (a court "may take judicial notice of factual circumstances from a previous case involving the same parties.").[2] And the 2007 summary judgment filings show that the Government

---

[2]  This Court takes judicial notice only as to the existence of the allegations in the *Brancatelli I* filings, not as to the truth of those allegations. *See, e.g., In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858, 876 (E.D. Tenn. 2005)

5

knew many of the factual allegations that it now, almost 17 years later, cites as a reason to amend its Complaint.

In its Motion for leave to amend complaint, the Government asserts that during the July 2024 depositions it "uncovered" the fact that "Frank Brancatelli made the $60,000 downpayment for the purchase of the Property in 1996." Doc. 51-1, at 3. The Government states that it seeks leave to add a "resulting trust" theory to its complaint because "[b]y providing the downpayment for Matthew Brancatelli to purchase the Property, Defendant Frank Brancatelli created a resulting trust." *Id.*, at 2, 5, 11.

But in a 2007 filing, the Government stated that "[t]he roughly $60,000.00 down payment used to purchase the property was provided by Mr. Brancatelli." *Brancatelli I*, Doc. 16, at 2, 5; *see also* Doc. 16-12, at 1 (Government's exhibit, a 1996 letter in which Frank states that he "gifted" Matthew $60,000 for a down payment on the Property).[3] So the Government knew in 2007 that Frank gave Matthew the $60,000 down payment. Indeed, the Government's 2023 complaint in this case alleges that Frank provided

---

(noting that under Federal Rule of Evidence 201, the court may take "judicial notice of the *existence* of these documents and the specific statements and/or allegations contained within the documents" but it "in no way intends to make any determination as to the truth of any of the facts alleged or otherwise asserted in the documents.").

[3] The letter references a house on "Hunting Lake," but the Government explained that at the time of the purchase, the street names for the new development had not been finalized and that the correct street was Gallant Way. *Brancatelli I*, Doc. 16, at 3, n.2.

Matthew with the $60,000 to purchase the property. *Brancatelli II*, Doc. 1, at 7, ¶20(d); *see Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (affirming the district court's denial of the plaintiff's motion to amend complaint where "[t]he plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint.").

The Government also wrote in 2007:

> The evidence, as detailed below, strongly suggests that Frank Brancatelli used his 18-year old son, Matthew,[] as his alter ego/nominee to purchase of the Gallant Way property. At the time of purchase, Matthew Brancatelli had no credit history, insufficient income to purchase the property, and by his own admission paid his parents $50.00 a week, at best, in "rent" subsequent to the purchase of the Gallant Way property.

*Id*. The Government went on to explain how it believed that Frank used Matthew to purchase the Property, citing numerous exhibits in support. *Id*. at 3–6.

This explanation in 2007 contradicts the Government's assertion in its current Motion that it learned in July 2024 through deposition testimony about similar items. *Compare Brancatelli I*, Doc. 16, at 2 (Government's exhibit of Internal Revenue Service's investigation notes from a 1998 interview with Matthew in which Matthew stated that he didn't "pay mortgage, insurance, or taxes associated with the house" and usually didn't pay weekly rent to his parents), *with Brancatelli II*, Doc. 51-1, at 3 (Government's Motion stating

7

that it recently learned that Matthew didn't earn enough money in 1996 to pay costs and fees associated with the purchase price or the mortgage payments from 1996 to 1998). Indeed, the Government, in its September 2023 Complaint in this case, alleged that "[a]t the time of purchase of the Property, Matthew Brancatelli did not have sufficient funds or means to purchase the Property. Matthew Brancatelli did not have sufficient income to pay a mortgage obtained solely in his name." *Brancatelli II*, Doc. 1, at 7, ¶20(d); *see Duggins*, 195 F.3d at 834 ("[t]he plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint.").

The Government says that it recently learned that Matthew never made any of the Property's utility payments and that none of the utilities were in Matthew's name. Doc. 51-1 at 3. But in 2007, the Government argued in its brief that "most if not all of the utilities related to the property are in the name of Frank Brancatelli," *Brancatelli I*, Doc. 16, at 2, and it submitted utility records showing Frank's name on the Electric and Gas utilities, *id.*, at 9–10, Doc. 16-33, Doc. 16-34.

The Government says that it recently learned that Frank intended for the Property to be in Matthew's name "only temporarily, until [Frank's] wife, Linda Brancatelli, completed her bankruptcy." *Brancatelli II*, Doc. 51-1, at 4. But the 1998 Internal Revenue Service investigation notes that the Government filed as an exhibit in 2007 shows that Matthew reported the same

8

thing in 1998. *See Brancatelli I*, Doc. 16-11, at 1–2. Simply put, the Government hasn't shown good cause for leave to amend its complaint to add a resulting trust theory that is based on factual allegations that it knew about almost 17 years before the Court's February 2024 deadline to amend the pleadings.[4] *See Leary*, 349 F.3d at 907; *see Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 537 (6th Cir. 2008) (holding that the plaintiff failed to demonstrate "good cause" under Rule 16(b)(4) where he knew of the facts underlying his motion to amend the complaint for "at least six years prior to his motion" and could have pleaded the allegations he sought to add "within the parameters of the court's scheduling order").

Next, the Government states that it wants to add a "lien tracing" theory to its Complaint. Doc. 51-1, at 1. The Government explains:

> To succeed on a lien tracing theory, the United States must show that it had a lien on Defendant Frank Brancatelli's property (i.e. his money) prior to him transferring the funds to his wife's separate bank account to pay the mortgage on the Property. Defendants' statements at their depositions supports the United States' theory. At the depositions, the Brancatelli defendants confirmed that checks were routinely written to Defendant Frank Brancatelli were cashed and deposited into Defendant Linda Brancatelli's bank account and

---

[4] The Government at times says that at the July 2024 depositions of Frank, Linda, and Matthew, it "uncovered" facts, Doc. 51-1, at 3, and at other times says that it learned information "previously unknown (or unconfirmed)," *id.* at 7. It doesn't identify which facts it uncovered and which it merely confirmed. Its reference, in sweeping terms, to facts that it "uncovered" or "[]confirmed," without specifics, is fatal to its burden to show good cause under Rule 16.

9

> that those funds were used to pay bills associated with the Property, including the mortgage.

*Id.*, at 11–12. This is also information that the Government says it uncovered during the July 2024 depositions. *Id.*, at 3; Doc. 53, at 7. But review of the 2006 case shows that the Government knew that Frank transferred money to Linda so that Linda could pay the mortgage on the Property because Frank said so in an affidavit that he filed.[5] *Brancatelli I*, Doc. 15-1, at 2, ¶10. The Government referenced these facts in its 2007 opposition brief. *Brancatelli I*, Doc. 16, at 19. It also knew that Frank "claimed on his federal individual income tax return mortgage interest expense deductions in excess of $100,000.00 between 2001 and 2006." *Id.*, at 2. The Government hasn't alleged that it newly learned anything specific about this arrangement that it didn't know before, such that it was precluded from asserting a lien tracing theory at an earlier time.[6] So it hasn't met its burden to show good cause for not seeking to amend its complaint sooner to add a lien tracing theory.

---

[5] In his 2007 affidavit, Frank stated that he "provide[d] support" to his wife Linda "as required" for spousal support under Ohio law. *Brancatelli I*, Doc. 15-1, at 2. In its responsive brief, the Government had challenged Frank's assertion that he was making spousal support payments, but claimed that, even if true, "the fact that [Frank] claimed the mortgage interest deductions on his tax returns belies their contention." *Brancatelli I*, Doc. 16, at 19. Either way, the record shows that the Government knew in 2007 that Frank transferred money to Linda so that Linda could pay the mortgage.

[6] In its 2023 Complaint, the Government explains that the tax liens against Frank's money that presumably serve as the basis for the lien-tracing theory were statutory liens that were in effect in 1998, when the Property became titled in Linda's name. Doc. 1, at 8, ¶20(g).

10

Finally, the Government explains that its Complaint alleges a "constructive fraud" theory under Ohio Revised Code § 1336.04(A)(2), part of Ohio's Uniform Fraudulent Transfer Act. Doc. 51-1, at 1. It now seeks leave to add an "actual fraud" theory under section 1336.04(A)(1). The Government states the following facts, which it claims that Frank and Linda admitted during their depositions, in support of its Motion for leave to add an actual fraud theory:

> the Property was purchased in 1996 using Defendant Frank Brancatelli's funds, but it was titled in their 18-year-old son Matthew Brancatelli's name because neither Frank nor Linda Brancatelli were unable to obtain financing to purchase the Property due to bad credit and an ongoing bankruptcy proceeding. Additionally, Defendant Linda Brancatelli said that they put the Property in Matthew's name and eventually hers to ensure that Defendant Frank Brancatelli's creditors were not able to collect from that asset. It was never anyone's intention or belief that Matthew Brancatelli would have any actual ownership interest in the Property.

Doc. 51-1, at 5. But in 2007, the Government had the Internal Revenue Service investigator's report in which Matthew stated that the Property was not Frank's house "because of [Frank's] credit record." *Brancatelli I*, Doc. 16-11, at 2. The report also stated that Matthew signed the mortgage papers for the Property "because his mother was in bankruptcy." *Id.* at 1–2. The report said that "in reality it was [Matthew's] mother's house," and that Matthew's name on the title was intended to be temporary. *Id.* at 2. And in its 2023 Complaint, the Government alleged that "[t]he Property was titled in Matthew

11

Brancatelli's name to avoid collection by Frank Brancatelli's creditors." *Brancatelli II*, Doc. 1, at 7, ¶20(f).

In its proposed amended complaint, the Government wants to add these factual allegations:

> On June 22, 1998, Matthew J. Brancatelli transferred record title of the Property to Linda Brancatelli by quit claim deed for $10 in consideration. On November 12, 2001, Linda Brancatelli transferred record title of the Property back to Matthew J. Brancatelli by quit claim deed for no consideration. On the same day, November 12, 2001, Matthew J. Brancatelli transferred record title of the Property back to Linda Brancatelli by a general warranty deed for no consideration.

Doc. 51-3, at 10. These are the same factual allegations that the Government argued in its 2007 brief:

> Despite the fact that Matthew Brancatelli purportedly transferred his interest in the Gallant Way property to his mother, Linda Brancatelli, on June 22, 1998, for $10.00….
>
> On or about November 12, 2001, Linda Brancatelli executed a Quit-Claim Deed transferring the property back to Matthew Brancatelli for no consideration. *See* Exh. 23. Frank Brancatelli also quit-claimed and released his dower interest in the Brancatelli residence.[] *Id*. On the same date, Matthew Brancatelli executed a Quit-Claim Deed transferring the property back to his mother, Linda Brancatelli[]. *See* Exh. 24.

*Brancatelli I*, Doc. 16, at 7–8. The Government further alleged in 2007 that at the time of the 1998 Property transfer, evidence showed that the Brancatellis knew about Frank's tax liabilities. *Id*. at 18. The Government referenced these,

12

and other facts, in support of its argument that an issue of fact existed as to whether Matthew's transfer of the Property to Linda Brancatelli was fraudulent. *Id*. at 16–18. It cited the same statute that it cites here in its proposed amended complaint—"Section 1336 of the Ohio Uniform Fraudulent Transfer Act (Ohio Rev. Code § 1336.01, *et seq*.)." *Id*. at 16; *see Brancatelli II*, Doc. 51-3, at 6.

The Government hasn't identified specific facts that it learned in the July 2024 depositions that it didn't know before the Court's February 2024 deadline to amend the complaint to add an "actual fraud" theory. And the record shows that the Government learned in 2007 the factual allegations that it now cites. So it has not shown good cause under Rule 16(b) and it is not entitled to amend its complaint. *See Leary*, 349 F.3d at 908 (affirming the district court's denial of the plaintiff's motion under Rule 16(b) to amend the complaint where the plaintiffs were "obviously aware of the basis of the claim for many months" and "were aware of the 'underlying facts' and the varying types of relief available"); *In re Nat'l Prescription Opiate Litig*., 956 F.3d at 843 ("the district court could grant leave to amend only if the Counties demonstrated that 'despite their diligence they could not meet the original deadline.'")(quoting *Leary*, 349 F.3d at 907).

In its reply brief, the Government states that it "may have previously had a hunch that these facts were so, based on suspicion or inadmissible information, but it did not have sufficient reliable information to include them

13

in the initial Complaint, as required by Federal Rules of Civil Procedure 8 and 11." Doc. 53, at 7. It cites no legal authority indicating that the Federal Rules of Civil Procedure require a party to first definitively confirm factual allegations before including them in a complaint. Legal authority indicates otherwise.[7] *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (citation and internal quotation marks omitted); *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests'") (quoting *Twombly*, 550 U.S. at 555).

A court also considers the prejudice to the defendants if leave to amend were granted. *See Leary*, 349 F.3d at 908. The Brancatellis were not on notice during discovery that they would have to defend against the three additional legal theories the Government now seeks to add to its complaint. At the recent status conference, defense counsel stated that if the Court were to permit the Government leave to amend its complaint, the Brancatellis would need to take more discovery. *See* Doc. 54. The fact discovery cutoff date was September 6,

---

[7] A claim based on actual fraud under Ohio Revised Code section 1336.04(A)(1) must be plead with particularity under Federal Rule of Civil Procedure 9(b). *See, e.g., First Fin. Bank v. Fox Cap. Grp., Inc.*, 692 F. Supp. 3d 762, 770 (S.D. Ohio 2023). The Government doesn't reference Rule 9(b) or claim that it was unable to meet this heightened pleading requirement by late February 2024, when the deadline to amend the pleadings expired.

14

which is about a week after the Government's Motion for leave to amend became ripe for ruling. So the Brancatellis have no time left to conduct further discovery—at most, they would have had a week. This circumstance suffices to establish prejudice to them. And while the parties could request additional time for discovery, additional time in this case is not warranted because the parties have had over seven months for fact discovery in this case.[8] This case is approaching its one-year anniversary; to re-open discovery now would unnecessarily delay this case.

*Conclusion*

For all of the reasons stated above, the Government's Motion for leave to amend complaint, Doc. 51, is denied.

Dated: September 6, 2024

                                                  */s/ James E. Grimes Jr.*
                                                  James E. Grimes Jr.
                                                  U.S. Magistrate Judge

---

[8] Given how much information relevant to this case was known by and seemingly accessible to the parties, it is unclear why they required so much time to conduct paper discovery. Regardless, they are not entitled to more time.